UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.
04-10045 MLW

DONALD E. SULLIVAN,  )
    Plaintiff,  )
    )
v.  )
    )
RAYTHEON COMPANY,  )
    Defendant.  )

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AND FOR SUMMARY JUDGMENT

In this third round of litigation between plaintiff Donald E. Sullivan ("Sullivan") and defendant Raytheon Company ("Raytheon"), Sullivan pursues the same types of claims that he pursued unsuccessfully in his last case. After his termination from Raytheon in 1992 for excessive absenteeism, Sullivan twice has requested reinstatement to Raytheon and twice has filed suit in response to Raytheon's refusal to reinstate him. His last case arose from a 1996 reinstatement request. This case arises from a 2001 request. Otherwise, the two cases are essentially the same, and this one fails for substantially the same reasons that his last one failed.

In Count I, Sullivan alleges that Raytheon engaged in discrimination and retaliation in violation of Mass. Gen. Laws, ch. 151B when refusing his September 25, 2001 request for reinstatement. In Count II, he relies on that same refusal to allege a violation of Mass. Gen. Laws, ch. 93, § 103. In Count III, he alleges that Raytheon violated two provisions of the Massachusetts workers' compensation statute, Mass. Gen. Laws, ch. 152, §§ 75A and 75B.

Raytheon is entitled to judgment on all three counts. The retaliation claim in Count I fails to state a claim upon which relief can be granted, because the alleged retaliation occurred *before* Sullivan filed his MCAD complaint. In addition, Raytheon is entitled to summary

judgment with respect to all claims in Count I for two independent reasons. The first is that Sullivan's lump sum settlement of a claim for workers' compensation benefits bars him from alleging that he is physically capable of returning to work at Raytheon. The second is that Sullivan is bound by his repeated claims that he is totally and permanently disabled. Count II fails to state a claim upon which relief can be granted, because it is precluded by the exclusivity provisions of Mass. Gen. Laws, ch. 151B. Count III also fails to state a claim upon which relief can be granted, because it is preempted by section 301 of the Labor Management Relations Act ("LMRA"), codified at 29 U.S.C. § 185. As a result, Raytheon is entitled to judgment in its favor as to all claims in the complaint.

## Background[1]

Sullivan began working for Raytheon as a security guard in 1965. (Complaint ¶ 3). Over the years, he had a number of industrial accidents and missed periods of time from work. (Complaint ¶ 5). Raytheon discharged him on March 31, 1992, citing his excessive absenteeism. (Complaint ¶ 10).

Sullivan filed a timely grievance concerning his discharge. (Complaint ¶ 17). The grievance went to arbitration, and the arbitrator found that Sullivan's termination was not for just cause. (Complaint ¶ 18). At the same time, the arbitrator found that Sullivan was unable to work based on his total disability, and as a result the arbitrator ordered that Raytheon reinstate Sullivan in an inactive employment status for the sole purpose of allowing him to apply for long

---

[1] Pursuant to the familiar standards applicable to motions under Fed. R. Civ. P. 12(b)(6), and for purposes of this motion only, Raytheon takes as true certain allegations in Sullivan's complaint. Pursuant to Local Rule 56.1, Raytheon is filing with this memorandum a concise statement of material facts of record as to which it contends there is no genuine issue to be tried.

2

term disability benefits. (Affidavit of Stephen S. Churchill ("Churchill Aff.") at A.631-632).[2] Once Sullivan's long term disability application was finally disposed of, Raytheon was permitted to make any appropriate changes in his employment status. (Id. at A.632).

On or about July 21, 1992, Sullivan filed a discrimination complaint with the Massachusetts Commission Against Discrimination ("MCAD"). (Complaint ¶ 12). He withdrew that complaint to file suit in Middlesex Superior Court ("Sullivan I"). (Complaint ¶ 13). The superior court granted Raytheon's motion for summary judgment based on Sullivan's repeated statements of disability. (Complaint ¶ 14). That judgment was affirmed by the Massachusetts Appeals Court, Sullivan v. Raytheon Co., 41 Mass. App. Ct. 1106 (1996), and the Supreme Judicial Court denied Sullivan's application for further appellate review, Sullivan v. Raytheon Co., 423 Mass. 1110 (1996). (Complaint ¶ 14).

In a July 3, 1996 letter, Sullivan requested reinstatement to Raytheon with or without a reasonable accommodation. (Complaint ¶ 21). Sullivan alleges that Raytheon failed to reinstate him, failed to engage in an interactive process with him, and failed to provide him with a reasonable accommodation. (Complaint ¶ 22).

On October 17, 1996, Sullivan filed another complaint with the MCAD. (Complaint ¶ 23). He again withdrew that complaint and again filed suit in Middlesex Superior Court ("Sullivan II"). (Complaint ¶ 24). Sullivan's complaint in that case alleged three counts: age discrimination, handicap discrimination, and retaliation under Mass. Gen. Laws, ch. 151B (Count I); retaliation under Mass. Gen. Laws, ch. 152, § 75B (Count II); and violations of the

---

[2] In support of this motion, Raytheon is filing a copy of the Churchill Aff. filed with this Court in Sullivan's prior lawsuit. That affidavit is authenticated by, and attached as Exhibit A to, the Supplemental Affidavit of Stephen S. Churchill ("Supp. Churchill Aff."), filed herewith. The page references with respect to the Churchill Aff. refer to numbers placed on that affidavit and its exhibits when preparing the record appendix for Sullivan's appeal to the First Circuit in his prior lawsuit.

3

Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.* (Count III). (Churchill Aff. at A.604-611). Counts I and II of the complaint arose from Sullivan's allegation that Raytheon refused his June 1996 request to be reinstated. (Id. at A.604-609).

Raytheon removed the complaint to this Court, where it proceeded as Civil Action No. 98-12395-MLW. (Complaint ¶ 25). On December 15, 1998, Raytheon moved to dismiss Counts I and II of the complaint. With respect to both counts, Raytheon's motion was based on Sullivan's repeated claims that he was totally disabled as of the time he requested reinstatement. In addition, with respect to Count II, Raytheon's motion was based on preemption under the LMRA.

This Court dismissed Count II on the grounds that it was preempted by the LMRA. See Sullivan v. Raytheon Co., 262 F.3d 41, 49 (1st Cir. 2001) (describing procedural history). The Court also dismissed the retaliation claim in Count I, but did not dismiss the claims in Count I alleging handicap and age discrimination. See id. at 46 (same).

Raytheon later moved for summary judgment with respect to Counts I and III, and its motion was allowed. (Complaint ¶ 26). The First Circuit affirmed. (Complaint ¶ 26). In affirming the entry of summary judgment on the discrimination claims, the First Circuit cited to Sullivan's repeated claims of total disability. Id. at 47. Sullivan filed a petition for certiorari, which was denied on January 22, 2002, Sullivan v. Raytheon Co., 534 U.S. 1118 (2002). (Complaint ¶ 26).

In a September 25, 2001 letter, while his petition to the Supreme Court was pending, Sullivan again requested that he be reinstated to a suitable position with or without a reasonable

4

accommodation. (Complaint ¶ 27). He also requested that Raytheon engage in an interactive process to determine what accommodation could be made in order to restore him to a suitable position. (Complaint ¶ 29). Sullivan alleges that Raytheon refused to reinstate him to a suitable position and failed to engage in an interactive process. (Complaint ¶ 29).[3]

At all material times, Sullivan was a member of the Raytheon Guards Association, and as such was covered under the terms of a collective bargaining agreement between Raytheon and the Raytheon Guards Association. (Complaint ¶ 15). A copy of the agreement in effect as of 2001 is attached to the Affidavit of James Remeika as Exhibit A.[4]

On January 14, 2002, Sullivan filed another complaint with the MCAD. (Complaint ¶ 31). He then filed suit in Middlesex Superior Court, and Raytheon removed the case to this Court.

## Argument

**A.   Sullivan's Retaliation Claim Under Mass. Gen. Laws, ch. 151B Fails To State A Claim Upon Which Relief Can Be Granted, Because He Filed His MCAD Complaint After Raytheon's Alleged Refusal To Reinstate Him.**

In Sullivan's prior lawsuit, this Court dismissed his retaliation claim under Mass. Gen. Laws, ch. 151B on the grounds that Sullivan filed his MCAD complaint *after* Raytheon allegedly refused to reinstate him. The First Circuit affirmed this Court's decision. Sullivan, 262 F.3d at 48-49. The chronology in this case is the same as in Sullivan's prior case – i.e., Sullivan filed his MCAD complaint on January 14, 2002, several months *after* Raytheon allegedly refused his

---

[3] More accurately, Raytheon responded, in relevant part, as follows: "If Mr. Sullivan believes that he currently has a right to work pursuant to the terms of the applicable Collective Bargaining Agreement, then I suggest that he make application for employment as that agreement provides." (See Letter from Gerard F. Gasperini to Frederick T. Golder, attached as Exhibit B to Sullivan's MCAD Charge of Discrimination, which is attached as Exhibit A to the complaint.)

[4] Because Sullivan refers to the collective bargaining agreement in his complaint, this Court may consider that agreement in the context of a motion pursuant to Fed. R. Civ. P. 12(b)(6). Beddall v. State Street Bank and Trust Co., 137 F.3d 12, 16-17 (1st Cir. 1998).

reinstatement request. As a result, his retaliation claim must be dismissed for the same reason his retaliation claim was dismissed in the prior lawsuit.

### B. Raytheon Is Entitled To Summary Judgment With Respect To Count I, Because Sullivan Cannot Prove That He Was Qualified.

The discrimination and retaliation claims in Count I arise from Raytheon's refusal to reinstate Sullivan following his 2001 reinstatement request.[5] His claims must fail based on his lump sum settlement of a workers' compensation claim for permanent and total incapacity, which creates a presumption that Sullivan is physically incapable of returning to work at Raytheon until at least 2006. More generally, because Sullivan repeatedly and unequivocally has claimed to be totally and permanently disabled since at least 1992, all of these claims must fail.

#### 1. A Necessary Element Of Any Discrimination Or Retaliation Claim Under Mass. Gen. Laws, ch. 151B Is That Sullivan Was Qualified To Perform The Duties Of The Position To Which He Sought Reinstatement.

For any claim of discrimination under Mass. Gen. Laws, ch. 151B, "the plaintiff has the initial burden of establishing a prima facie case," the elements of which will vary depending on the nature of the alleged discrimination. Beal v. Board of Selectmen of Hingham, 419 Mass. 535, 540-41 (1995) (citations omitted). If a plaintiff is unable to prove any element of a prima facie case, then the employer is entitled to judgment. Id. at 543.

With respect to his claim of *disability* discrimination, Sullivan must prove as part of his prima facie case that he was "qualified" for the position to which he sought reinstatement. Sullivan, 262 F.3d at 47. Sullivan would have been "qualified" only if he could have performed the essential elements of the position with or without reasonable accommodation. Id. When a

---

[5] Although Sullivan's complaint does not specifically allege the basis on which he believes Raytheon discriminated against him, his MCAD Charge of Discrimination, which is attached to his complaint as Exhibit A, alleges age and disability discrimination. As a result, Raytheon assumes for purposes of this motion that Sullivan is alleging discrimination based on age and disability.

6

plaintiff has no reasonable expectation of demonstrating he was qualified, a court need not consider possible accommodations. Beal, 419 Mass. at 543. Similarly, with respect to his claim of *age* discrimination, Sullivan must prove as part of his prima facie case that he was qualified for the position to which he sought reassignment. Sullivan, 262 F.3d at 48; Powers v. H.B. Smith Co., 42 Mass. App. Ct. 657, 661 (1997). As a result, if Sullivan is unable to establish that he was qualified for his former security guard position at the time he requested reinstatement, then his claims of disability and age discrimination must fail.

Although Massachusetts courts have not yet had occasion to consider, in the context of a failure to reinstate case such as Sullivan's, whether a prima facie case of retaliation under Mass. Gen. Laws, ch. 151B requires a plaintiff to prove that he was qualified for the position in question, there are at least three reasons to expect they will do so when presented with the issue.

First, the rationale for such a requirement in the context of discrimination claims under Mass. Gen. Laws, ch. 151B applies with equal force to claims of retaliation. In each case, if a plaintiff cannot show he was qualified for the position to which he was seeking reinstatement, he cannot reasonably claim that he would have been reinstated to that position absent discrimination or retaliation. The purpose of requiring a plaintiff to prove a prima facie case when charging an employer with an illicit motive is to "'eliminate[] the most common nondiscriminatory reasons for'" the adverse action at issue. Dartt v. Browning-Ferris Industries, Inc., 427 Mass. 1, 9 (1998), quoting Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981). Thus, proof of a prima facie case allows for a rational inference that the plaintiff would not have suffered the adverse employment action in the absence of the employer's discriminatory animus. This mechanism applies equally well to claims of discrimination and retaliation.

Second, each of Sullivan's discrimination and retaliation claims involves the same question: did an illicit motive cause Raytheon to take an adverse employment action? The only difference between his claims is the alleged motivation for Raytheon's actions. Because the nature of the claims is otherwise the same, the nature of the analysis should be the same.[6]

Third, for substantially these reasons, Massachusetts courts already have applied to other statutes the prima facie requirements applicable to discrimination claims under Mass. Gen. Laws, ch. 151B. See, e.g., Beal, 419 Mass. at 545-46 (applying requirements to equal protection claim under 42 U.S.C. § 1983), citing Lipsett v. University of Puerto Rico, 864 F.2d 881 (1st Cir. 1988). In Lipsett, the First Circuit applied the prima facie elements employed in Title VII actions to claims under the equal protection clause and Title IX, because all of those actions required a similar showing of discriminatory intent. Lipsett, 864 F.2d at 896-97, 899.

In short, while Massachusetts courts have explicitly held that a plaintiff bringing claims of discrimination must prove as part of his prima facie case that he was qualified for the position in question, it is equally clear that those courts would impose the same initial burden with respect to claims for retaliation under Mass. Gen. Laws, ch. 151B.

---

[6] The similarity in the wording of the different statutory provisions upon which Sullivan relies underscores the similarity of what is required to prove a violation of those provisions. Mass. Gen. Laws, ch. 151B, § 4(1B), which is the basis for his age discrimination claim, makes it an illegal practice for an employer "because of the age of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual, or to discriminate against such individual in compensation or in terms, conditions or privileges of employment." Mass. Gen. Laws, ch. 151B, § 16, which is the basis for his disability discrimination claim, makes it an illegal practice for an employer "to dismiss from employment or refuse to hire, rehire or advance in employment or otherwise discriminate against, because of his handicap, any person." Mass. Gen. Laws, ch. 151B, § 4(4), which is the basis for his retaliation claim, makes it an illegal practice for an employer "to discharge, expel or otherwise discriminate against any person because he has ... filed a complaint."

      2.      **Sullivan's Lump Sum Workers' Compensation Settlement Bars Him, As A Matter Of Law, From Alleging That He Is Able To Work.**

Based on alleged injuries in 1988, Sullivan received the maximum amount of workers' compensation benefits to which he was entitled under Mass. Gen. Laws, ch. 152, §§ 34 and 35, which provide benefits for total and partial incapacity, respectively. Those benefits were exhausted as of August 1, 1998. (Churchill Aff. at A.701; Supp. Churchill Aff. at Exh. B).

After exhausting those benefits, Sullivan filed a claim for benefits under Mass. Gen. Laws, ch. 152, § 34A, which provides continued benefits for "permanent and total" incapacity. (Supp. Churchill Aff. at Exh. B). On May 4, 2001, Sullivan settled that claim by receiving a lump sum payment in the net amount of $110,000. (Id.). (The total settlement amount was $185,000, but $32,500 went to his attorneys, $20,000 went to his wife, and $22,500 were attributable to benefits under Mass. Gen. Laws, ch. 152, § 36.) That lump sum payment represents benefits for the period beginning August 1, 1998, the date as of which his prior benefits were exhausted. His weekly benefit was calculated to be $115.59 per week. (Id.). Therefore, as of May 4, 2001 – the date of the settlement – the amount of the lump sum attributable to future benefits was about $93,500 (the net amount of $110,000 minus $16,500, which is the product of $115.59 per week times the approximately 143 weeks from August 1, 1998 to May 4, 2001).

Pursuant to Mass. Gen. Laws, ch. 152, § 48(4), Sullivan's receipt of a lump sum payment in return for a right to claim future benefits "shall create a presumption that [he] is physically

9

incapable of returning to work with the employer where the alleged injury occurred."[7] This presumption "shall continue for a period of one month for each fifteen hundred dollar amount included in the settlement for future weekly benefits." Id. Thus, based on the portion of Sullivan's lump sum settlement attributable to future benefits ($93,500), he is presumed to be physically incapable of returning to work for about 62 months from May 4, 2001, or until at least 2006.

The presumption of physical incapacity precludes Sullivan from proving that he was physically capable of returning to work at Raytheon at the time he requested reinstatement in 2001. This case is similar to Goncalves v. Stop & Shop Supermarket Co., 2001 WL 1839718 (Mass. Super. Ct. 2001) (attached as Exh. A). In Goncalves, like in this case, the plaintiff had suffered a work-related injury, had entered into a lump sum settlement of a workers' compensation claim, had unsuccessfully sought reinstatement, and had then filed a complaint of discrimination. In entering summary judgment for the employer, the court held that the presumption created by Mass. Gen. Laws, ch. 152, § 48(4) barred the plaintiff, as a matter of law, from pursuing his discrimination claim. Id. at *3. ("Goncalves cannot demonstrate that he was capable of performing the essential functions of any job with or without reasonable accommodation since, according to the [lump sum settlement] agreement, he was physically

---

[7] It is Raytheon's position that this presumption is irrebuttable, meaning that Sullivan's physical incapacity "is conclusively and irrebuttably presumed and [he] will not be allowed to show the contrary." Zelman v. Gregg, 16 F.3d 445, 447 n.3 (1st Cir. 1994) (citations omitted). The Massachusetts legislature plainly intended for the presumption to be irrebuttable, because it would be patently unfair to allow a plaintiff to assert that he can work for a particular employer during the same period for which he was deemed permanently and totally disabled pursuant to a lump sum settlement. In any event, even if the presumption were rebuttable, it could not be overcome "unless and until the party disputing the presumed fact offers substantial countervailing evidence." Id. at 447 (citations omitted). Sullivan cannot do so, as discussed in the next section.

incapable of returning to work at Stop & Shop until at least April 2, 1998. See G.L. c. 152, § 48(4) (2000).").[8] Sullivan's claims of discrimination and retaliation fail for the same reason.

### 3. Sullivan Will Be Unable To Prove That He Is Qualified Given His Repeated And Unequivocal Claims Of Total And Permanent Disability.

Sullivan's discrimination and retaliation claims under Mass. Gen. Laws, ch. 151B also fail for the same reason that those claims failed in his prior lawsuit. As set forth in the First Circuit's decision, Sullivan has claimed repeatedly since the early 1990's, and without any evidence to the contrary, that he is totally disabled. Sullivan, 262 F.3d at 47.

First, Sullivan applied for and received workers' compensation benefits. When taking his lump sum settlement into account, those benefits continue through today. As alleged in Sullivan's prior complaint, an administrative law judge of the Massachusetts Department of Industrial Accidents agreed with Sullivan and found that Sullivan was totally disabled as of October 12, 1994. (Churchill Aff. at A.606). He continued to receive benefits until at least 1998, when he exhausted his entitlement to benefits. (Id. at A.692, 701). He then applied for total and permanent disability benefits, and in May 2001, just months before again requesting reinstatement to Raytheon, he agreed to a large lump sum settlement that included benefits for future years. (Supp. Churchill Aff. at Exh. B). Under Massachusetts workers' compensation law, "'totally disabled' means one who is 'unable to engage in *any* occupation, or obtain or perform *any* work for compensation or profit.'" August v. Offices Unlimited, Inc., 981 F.2d 576, 582 (1st Cir. 1992) (citations omitted) (emphasis added). As a result, at the time he requested reinstatement to Raytheon, Sullivan was receiving workers' compensation benefits based on his claim that he was unable to perform any work.

---

[8] Evidently, the Superior Court considered the presumption of § 48(4) to be irrebuttable.

11

Second, when testifying in 2000 in connection with his prior lawsuit, Sullivan testified that his condition has continued to deteriorate since the early 1990's.

> Q. How would you describe your physical condition today?
>
> A. I'd say about the same as 1992.
>
> Q. Between 1992 and today, have there been any –
>
> A. Maybe a little worse now than I was in 1992.
>
> * * *
>
> Q. Between March of 1992 and the present, it is fair to say that your condition, your physical condition has gotten steadily worse?
>
> A. It's a yes and a no, I would think. I'm worse, but I can still function.
>
> Q. Has there been any period from March of 1992 to the present when your physical condition improved?
>
> A. No.

(Churchill Aff. at A.687-688). Sullivan also testified that he has not worked for any other company since 1992 and that he has not engaged in any physical activities since that time. (Id. at A.686).

Third, Sullivan applied for long term disability benefits. The disability benefits plan in which Sullivan participated defined total disability in two phases. First, for the initial 24 months, total disability meant that the medical evidence must prove that he was wholly and continuously unable to perform substantially all of the duties of his occupation at Raytheon. Sullivan, 262 F.3d at 45. Second, after the initial 24 months, total disability meant that the medical evidence must prove that Sullivan was unable to engage in *any* gainful employment for which he was qualified based on his education, training, or experience. Id. Sullivan received benefits for the first phase but not for the second, so he filed suit to seek further benefits – i.e., he filed suit

claming that he was unable to engage in any gainful employment. Id. at 46. When pursuing his claim for long term disability benefits, Sullivan never indicated to MetLife that he was able to work in any way. (Churchill Aff. at A.691-692). He continued to pursue his claim up until January 2002, when the Supreme Court denied his petition for certiorari in Sullivan II.

Fourth, Sullivan applied for social security disability benefits. He began receiving benefits effective 1992 and continued to receive such benefits as of his deposition in 2000. (Id. at A.690, 701, 753). Sullivan never indicated to the Social Security Administration that he would be able to work in any way, such as if he received reasonable accommodations. (Id. at A.690). To obtain social security disability benefits, Sullivan needed to demonstrate that he was "unable to do his previous work" and that he could not "engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). Regardless of the standard for receiving social security disability benefits, Sullivan believed when applying for such benefits that he had to be totally and permanently disabled to obtain them. (Churchill Aff. at A.708). As a result, as of 2000, and presumably continuing during 2001 when he requested reinstatement, Sullivan was receiving social security disability benefits based on his claim that he was unable to engage in any kind of substantial gainful work.

Finally, when filing his 1993 U.S. income tax return, Sullivan submitted a Schedule R stating that he was *permanently and totally* disabled. (Id. at A.706-707). Based on his deposition testimony, he plainly understood the purpose of this form.

> Q. Now, is it your understanding as this form says at the top that you can use the Schedule R, this form, if you are either 65 or older or you are under age 65 and you retired on permanent and total disability; is that you understanding about this form?
>
> A. My understanding is if I met two tests that I could apply for it.
>
> Q. What were the two tests to your understanding?

13

> A. You had to be disabled or maybe it was you had to be retired. I'm not sure.
>
> Q. Was it your understanding that you had to be permanently and totally disabled in order to fill out this form?
>
> A. Yes.
>
> Q. And when you filled out this form, you considered yourself to be permanently and totally disabled; is that right?
>
> A. Yes, I do.

(Id. at A.706-707). In subsequent tax years, Sullivan repeatedly listed his occupation as "disabled." (Id. at A.695-696).

These representations of total disability preclude Sullivan from bringing claims of discrimination or retaliation under Mass. Gen. Laws, ch. 151B, because he will be unable to prove that he was "qualified." Sullivan, 262 F.3d at 47-48. In addition, because he cannot prove that he was "qualified," and therefore protected under Mass. Gen. Laws, ch. 151B, Raytheon had no obligation to engage in an interactive process with him. Id.

C. **Count II Must Be Dismissed For Failure To State A Claim Upon Which Relief Can Be Granted, Because Claims Under Mass. Gen. Laws, ch. 93, § 103 Are Precluded By The Exclusivity Provision Of Mass. Gen. Laws, ch. 151B.**

In alleging a violation of Mass. Gen. Laws, ch. 93, § 103, the Massachusetts Equal Rights Act, Sullivan relies on the exact same facts on which he relies for his discrimination claim under Mass. Gen. Laws, ch. 151B. (Complaint ¶¶ 35-38). It is well established, however, that Mass. Gen. Laws, ch. 151B "provides the exclusive remedy for employment discrimination not based on preexisting tort law or constitutional protections." Agin v. Federal White Cement, 417 Mass. 669, 672 (1994). Claims of discrimination brought under Mass. Gen. Laws, ch. 93, § 103 are among those precluded by the exclusivity provision of Mass. Gen. Laws, ch. 151B. Green v.

Wyman-Gordon Co., 422 Mass. 551, 557-58 (1996) ("The plaintiff's claims under the civil rights act and the equal rights act are similarly precluded. ... Where, as here, c. 151B applies, its comprehensive remedial scheme is exclusive, in the absence of an explicit legislative command to the contrary. Otherwise, '[t]o permit such duplication of remedies would allow claimants to bypass the procedural prerequisites defined by the [L]egislature in [G.L. c. 151B], crippling the effectiveness of this specific statutory remedy for discrimination in employment.'") (citations omitted; brackets in original). As a result, Count II must be dismissed.

### D. Count III Must Be Dismissed For Failure To State A Claim Upon Which Relief Can Be Granted, Because Claims Under G.L c. 152, §§ 75A And 75B Are Preempted By Section 301 Of The LMRA.

The First Circuit previously ruled that Sullivan's claim under Mass. Gen. Laws, ch. 152, § 75B was completely preempted by section 301 of the LMRA. Sullivan, 262 F.3d at 49-50. In short, Sullivan's claims under the worker's compensation statute are preempted by the LMRA, because they require a court to interpret the provisions of a collective bargaining agreement. Id. Although alleging a new violation,[9] the workers' compensation claims in Sullivan's current complaint allege the same facts that led to the preemption of his prior claim – i.e., he is a member of the Raytheon Guards Association and he is covered under the terms of the collective bargaining agreement between Raytheon and the Association. (Complaint ¶ 15; Complaint Exh. A at 1). As a result, for the same reasons that his workers' compensation claim was completely preempted in the earlier case, it is completely preempted in this case.

---

[9] In Sullivan II, he brought a claim under Mass. Gen. Laws, ch. 152, § 75B. In this case, he brings claims under both Mass. Gen. Laws, ch. 152, §§ 75A and 75B. His claim under section 75A fails for the same reason as the claim under section 75B, because both sections have identical provisions regarding the preclusive effect of collective bargaining agreements.

## Conclusion

For the foregoing reasons, Raytheon respectfully requests that this Court grant summary judgment in Raytheon's favor as to Count I and dismiss Counts I (to the extent it alleges retaliation), II, and III for failing to state a claim upon which relief can be granted.

RAYTHEON COMPANY
By its attorneys,

*/s/ James F. Kavanaugh*

James F. Kavanaugh, Jr.
BBO# 262360
Stephen S. Churchill
BBO# 564158
CONN KAVANAUGH ROSENTHAL
  PEISCH & FORD, LLP
Ten Post Office Square
Boston, MA 02109
(617) 482-8200

Dated: February 3, 2004

192944.1

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by (hand) (mail) on 2/3/04