UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.
04-10045 MLW

DONALD E. SULLIVAN, )
    Plaintiff, )
)
v. )
)
RAYTHEON COMPANY, )
    Defendant. )

## DEFENDANT'S STATEMENT OF FACTS

Pursuant to Local Rule 56.1, defendant Raytheon Company ("Raytheon") submits this concise statement of material facts of record as to which it contends there is no genuine issue to be tried.

### Employment History

1. Plaintiff Donald Sullivan ("Sullivan") began working for Raytheon as a security guard in 1965. (Complaint ¶ 3).

2. Over the years, he had a number of industrial accidents and missed periods of time from work. (Complaint ¶ 5).

3. Raytheon discharged him on March 31, 1992, citing his excessive absenteeism. (Complaint ¶ 10).

### Grievance and Arbitration

4. At all relevant times, Sullivan has been a member of the Raytheon Guards Association, and as such he is covered under the terms of a collective bargaining agreement between Raytheon and the union. (Complaint ¶ 15).

5. A copy of the agreement in effect as of 2001 is attached to the Affidavit of James Remeika as Exhibit A.

6. Sullivan filed a timely grievance concerning his discharge. (Complaint ¶ 17).

7. The grievance went to arbitration, and the arbitrator found that Sullivan's termination was not for just cause. (Complaint ¶ 18).

8. At the same time, the arbitrator found that Sullivan was unable to work based on his total disability, and as a result the arbitrator ordered that Raytheon reinstate Sullivan in an inactive employment status for the sole purpose of allowing him to apply for long term disability benefits. (Affidavit of Stephen S. Churchill ("Churchill Aff.") at A.631-632).[1]

9. Once Sullivan's long term disability application was finally disposed of, Raytheon was permitted to make any appropriate changes in his employment status. (Id. at A.632).

## Prior Litigation

10. On or about July 21, 1992, Sullivan filed a discrimination complaint with the Massachusetts Commission Against Discrimination ("MCAD"). (Complaint ¶ 12).

11. He withdrew that complaint to file suit in Middlesex Superior Court ("Sullivan I"). (Complaint ¶ 13).

12. The superior court granted Raytheon's motion for summary judgment based on Sullivan's repeated statements of disability. (Complaint ¶ 14).

13. That judgment was affirmed by the Massachusetts Appeals Court, Sullivan v. Raytheon Co., 41 Mass. App. Ct. 1106 (1996), and the Supreme Judicial Court denied Sullivan's

---

[1] In support of this motion, Raytheon is filing a copy of the Churchill Aff. filed with this Court in Sullivan's prior lawsuit. That affidavit is authenticated by, and attached as Exhibit A to, the Supplemental Affidavit of Stephen S. Churchill ("Supp. Churchill Aff."), filed herewith. The page references with respect to the Churchill Aff. refer to numbers placed on that affidavit and its exhibits when preparing the record appendix for Sullivan's appeal to the First Circuit in his prior lawsuit.

application for further appellate review, Sullivan v. Raytheon Co., 423 Mass. 1110 (1996). (Complaint ¶ 14).

14. In a July 3, 1996 letter, Sullivan requested reinstatement to Raytheon with or without a reasonable accommodation. (Complaint ¶ 21).

15. Sullivan alleges that Raytheon failed to reinstate him, failed to engage in an interactive process with him, and failed to provide him with a reasonable accommodation. (Complaint ¶ 22).

16. On October 17, 1996, Sullivan filed another complaint with the MCAD. (Complaint ¶ 23).

17. He again withdrew that complaint and again filed suit in Middlesex Superior Court ("Sullivan II"). (Complaint ¶ 24).

18. Sullivan's complaint in that case alleged three counts: age discrimination, handicap discrimination, and retaliation under Mass. Gen. Laws, ch. 151B (Count I); retaliation under Mass. Gen. Laws, ch. 152, § 75B (Count II); and violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.* (Count III). (Churchill Aff. at A.604-611).

19. Counts I and II of the complaint arose from Sullivan's allegation that Raytheon refused his June 1996 request to be reinstated. (Id. at A.604-609).

20. Raytheon removed the complaint to this Court, where it proceeded as Civil Action No. 98-12395-MLW. (Complaint ¶ 25).

21. On December 15, 1998, Raytheon moved to dismiss Counts I and II of the complaint. With respect to both counts, Raytheon's motion was based on Sullivan's repeated claims

3

that he was totally disabled as of the time he requested reinstatement. In addition, with respect to Count II, Raytheon's motion was based on preemption under the LMRA.

22. This Court dismissed Count II on the grounds that it was preempted by the LMRA. See Sullivan v. Raytheon Co., 262 F.3d 41, 49 (1st Cir. 2001) (describing procedural history).

23. The Court also dismissed the retaliation claim in Count I, but did not dismiss the claims in Count I alleging handicap and age discrimination. See id. at 46 (same).

24. Raytheon later moved for summary judgment with respect to Counts I and III, and its motion was allowed. (Complaint ¶ 26).

25. The First Circuit affirmed. (Complaint ¶ 26).

26. In affirming the entry of summary judgment on the discrimination claims, the First Circuit cited to Sullivan's repeated claims of total disability. Id. at 47.

27. Sullivan filed a petition for certiorari, which was denied on January 22, 2002, Sullivan v. Raytheon Co., 534 U.S. 1118 (2002). (Complaint ¶ 26).

### 2001 Request for Reinstatement

28. In a September 25, 2001 letter, while his petition to the Supreme Court was pending, Sullivan again requested that he be reinstated to a suitable position with or without a reasonable accommodation. (Complaint ¶ 27).

29. He also requested that Raytheon engage in an interactive process to determine what accommodation could be made in order to restore him to a suitable position. (Complaint ¶ 29).

30. Sullivan alleges that Raytheon refused to reinstate him to a suitable position and failed to engage in an interactive process. (Complaint ¶ 29).[2]

---

[2] More accurately, Raytheon responded, in relevant part, as follows: "If Mr. Sullivan believes that he currently has a right to work pursuant to the terms of the applicable Collective Bargaining Agreement,

4

31. On January 14, 2002, Sullivan filed another complaint with the MCAD. (Complaint ¶ 31).

## Claims for Worker's Compensation Benefits

32. An administrative law judge of the Massachusetts Department of Industrial Accidents found that Sullivan was totally disabled as of October 12, 1994. (Churchill Aff. at A.606).

33. Based on alleged injuries in 1988, Sullivan received the maximum amount of workers' compensation benefits to which he was entitled under Mass. Gen. Laws, ch. 152, §§ 34 and 35, which provide benefits for total and partial incapacity, respectively. Those benefits were exhausted as of August 1, 1998. (Churchill Aff. at A.692, 701; Supp. Churchill Aff. at Exh. B).

34. After exhausting those benefits, Sullivan filed a claim for benefits under Mass. Gen. Laws, ch. 152, § 34A, which provides continued benefits for "permanent and total" incapacity. (Supp. Churchill Aff. at Exh. B).

35. On May 4, 2001, Sullivan settled that claim by receiving a lump sum payment in the net amount of $110,000. (Id.). (The total settlement amount was $185,000, but $32,500 went to his attorneys, $20,000 went to his wife, and $22,500 were attributable to benefits under Mass. Gen. Laws, ch. 152, § 36.)

36. That lump sum payment represents benefits for the period beginning August 1, 1998, the date as of which his prior benefits were exhausted. His weekly benefit was calculated to be $115.59 per week. (Id.).

---

then I suggest that he make application for employment as that agreement provides." (See Letter from Gerard F. Gasperini to Frederick T. Golder, attached as Exhibit B to Sullivan's MCAD Charge of Discrimination, which is attached as Exhibit A to the complaint.)

## Claim for Long Term Disability Benefits

37. Sullivan applied for long term disability benefits.

38. The disability benefits plan in which Sullivan participated defined total disability in two phases. First, for the initial 24 months, total disability meant that the medical evidence must prove that he was wholly and continuously unable to perform substantially all of the duties of his occupation at Raytheon. Sullivan, 262 F.3d at 45. Second, after the initial 24 months, total disability meant that the medical evidence must prove that Sullivan was unable to engage in *any* gainful employment for which he was qualified based on his education, training, or experience. Id.

39. Sullivan received benefits for the first phase but not for the second, so he filed suit to seek further benefits – i.e., he filed suit claming that he was unable to engage in any gainful employment. Id. at 46.

40. When pursuing his claim for long term disability benefits, Sullivan never indicated to MetLife that he was able to work in any way. (Churchill Aff. at A.691-692).

41. He continued to pursue his claim up until January 2002, when the Supreme Court denied his petition for certiorari in Sullivan II.

## Claim for Social Security Disability Benefits

42. Sullivan applied for social security disability benefits. He began receiving benefits effective 1992 and continued to receive such benefits as of his deposition in 2000. (Id. at A.690, 701, 753).

43. Sullivan never indicated to the Social Security Administration that he would be able to work in any way, such as if he received reasonable accommodations. (Id. at A.690).

44. Sullivan believed when applying for such benefits that he had to be totally and permanently disabled to obtain them. (Churchill Aff. at A.708).

### Tax Returns

45. When filing his 1993 U.S. income tax return, Sullivan submitted a Schedule R stating that he was *permanently and totally* disabled. (Id. at A.706-707).

46. Sullivan understood that the purpose of this form. (Id. at A.706-707).

47. In subsequent tax years, Sullivan repeatedly listed his occupation as "disabled." (Id. at A.695-696).

### Deposition Testimony

48. When testifying in 2000 in connection with his prior lawsuit, Sullivan testified that his condition has continued to deteriorate since the early 1990's. (Churchill Aff. at A.687-688).

49. Sullivan also testified that he has not worked for any other company since 1992 and that he has not engaged in any physical activities since that time. (Id. at A.686).

RAYTHEON COMPANY
By its attorneys,

/s/ Scott C.

James F. Kavanaugh, Jr.
BBO# 262360
Stephen S. Churchill
BBO# 564158
CONN KAVANAUGH ROSENTHAL
 PEISCH & FORD, LLP
Ten Post Office Square
Boston, MA 02109
(617) 482-8200

Dated: February 3, 2003

193507 1

**CERTIFICATE OF SERVICE**
I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by [hand] [mail] on 2/3/04
/s/