UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED IN CLERKS OFFICE
U.S. DISTRICT COURT DISTRICT OF MASS.

| | |
|---|---|
| DONALD E. SULLIVAN, Plaintiff, v. RAYTHEON COMPANY, Defendant. | CIVIL ACTION NO: 04-10045-MLW BBO NO. 198580 |

## PLAINTIFF'S MOTION TO REMAND

### Preliminary Statement

The plaintiff, Donald E. Sullivan ("Sullivan"), originally brought suit in the state Superior Court for Middlesex County on or about December 4, 2003, Civil Docket No. MICV2003-04910-A, against his employer, the defendant Raytheon Company ("Raytheon") for employment discrimination in violation of state law, M.G.L. c. 151B.

Sullivan asserted three claims in his compliant against the defendant Raytheon arising out of his employment with Raytheon: Count I - Handicap discrimination, failure to provide a reasonable accommodation, and retaliation in violation of M.G.L. c. 151B; Count II - Handicap discrimination, failure to provide a reasonable accommodation, and retaliation in violation of M.G.L. c. 93, § 103; Count III -

Discrimination for filing workers' compensation claims in violation of M.G.L. c. 152, §§ 75A and 75B.

On or about January 8, 2004, the defendant Raytheon filed a Notice of Removal to the United States District Court for the District of Massachusetts claiming that the workers' compensation claim (Count III) is completely preempted by Section 301 of the Labor Management Relations Act, codified at 20 U.S.C. §185.

**ISSUE PRESENTED**

Whether a case arising under Massachusetts worker compensation law may be removed to federal district court on the basis of federal preemption where the plaintiff is a member of a collective bargaining agreement?

**STATEMENT OF FACTS**[1]

Sullivan first began his employment with Raytheon as a Security Guard in 1965. Sullivan always performed his work in a fully competent and professional manner. Over the years, Sullivan had a number of industrial accidents, missed periods of time from work, applied for, and received workers' compensation payments. As a result of these industrial accidents, Sullivan developed handicaps that restricted his ability to work (Comp. ¶¶3-6).

---

[1] The facts are drawn from Sullivan's verified Complaint.

Although Sullivan requested reasonable accommodations for his handicaps, they were not given to him. As a result of Raytheon's failure to provide reasonable accommodations for Sullivan's handicaps, he began to miss time from work (Comp. ¶¶7-8).

The main reason Sullivan missed time from work was because of Raytheon's failure to provide appropriate accommodations for his handicaps when Sullivan needed the accommodations. Raytheon discharged Sullivan on March 31, 1992, and gave as the reason "excessive absenteeism." (Comp. ¶¶9-10).

Sullivan asserts that if Raytheon had provided him reasonable and appropriate accommodations for his handicaps when he needed them, he would not have been absent from work and would have been able to continue working as a security guard (Comp. ¶11).

On or about July 21, 1992, Sullivan filed a Charge of Discrimination with the Massachusetts Commission Against Discrimination ("MCAD"). Sullivan subsequently withdrew the Charge of Discrimination and filed a private lawsuit for discrimination in the Middlesex Superior Court, Civil Docket No. MICV92-05823 (Sullivan I) ((Comp. ¶¶12-13).

The state superior court, (Volterra, J.), granted summary judgment in Sullivan I, affirmed by the Appeals

Court A.C. NO. 95-P-348, 41 Mass. App. Ct. 1106 (1996), and Sullivan's Application for Further Appellate Review was denied by the state Supreme Judicial Court by Order dated October 28, 1996, 423 Mass. 1110 (1996) ((Comp. ¶14).

Sullivan was at all material times a member of the Raytheon Guards Association, and as such was covered under the terms of a collective bargaining agreement between Raytheon Company and the Raytheon Guards Association (Comp. ¶15).

Sullivan became disabled working for Raytheon, and then Raytheon fired Sullivan alleging as the reason "excessive absenteeism" brought about by Raytheon's failure to provide Sullivan a reasonable accommodation (Comp. ¶16).

Sullivan filed a timely grievance concerning the March 31, 1992, discharge, and the issue to be decided was whether or not Raytheon had just cause to discharge Sullivan for alleged "excessive absenteeism." The discharge grievance went to arbitration, and in the arbitration decision dated August 14, 1995, the arbitrator found that Sullivan's termination "was not for proper or just cause ..." The arbitrator further ruled that Sullivan

had to "be reinstated, retroactive to March 31, 1992." (Comp. ¶¶17-19).[2]

Raytheon failed to reinstate Sullivan, failed to engage in an interactive process with Sullivan in order to find a reasonable accommodation for Sullivan, and failed to provide Sullivan with a reasonable accommodation. By letter dated July 3, 1996, Sullivan again requested reinstatement to a suitable position with or without a reasonable accommodation. Raytheon failed to reinstate Sullivan, failed to engage in an interactive process with Sullivan in order to find a reasonable accommodation for Sullivan, and failed to provide Sullivan with a reasonable accommodation (Comp. ¶¶20-22).

On October 17, 1996, Sullivan filed another Charge of Discrimination with the MCAD. Sullivan subsequently withdrew that Charge of Discrimination and filed a private lawsuit in the Middlesex Superior Court alleging both state and federal claims. This case was removed to the Federal District Court, Civil Action No. 98-12395-MLW (Sullivan II) (Comp. ¶¶23-25).

The District Court, (Wolf, J.), granted summary judgment in Sullivan II, affirmed by the Court of Appeals,

[2] It is important to note that the Arbitration Decision came after the superior court Decision in Sullivan I.

No. 00-2551, and the Petition for Writ of Certiorari was denied by the United States Supreme Court (Comp. ¶26).[3]

By letter dated September 25, 2001, Sullivan again requested that he be reinstated to a suitable position with or without a reasonable accommodation. Sullivan also requested that Raytheon engage in an interactive process to determine what accommodation could be made in order to restore Sullivan to a suitable position with or without a reasonable accommodation. Raytheon refused to reinstate Sullivan to a suitable position with or without a reasonable accommodation and failed to engage in an interactive process to determine whether Sullivan can be restored to a suitable position with or without a reasonable accommodation (Comp. ¶¶27-29).

Sullivan asserts that the defendant Raytheon failed to engage in an interactive process to provide a reasonable accommodation for his impairments, and that the failure and refusal to engage in an interactive process to find a reasonable and suitable accommodation for Sullivan is a violation of G.L. c. 151B. On January 14, 2002, Sullivan filed another Charge of Discrimination with the MCAD (Comp. ¶¶30-31).

---

[3] It is important to note that Sullivan II contained a federal claim under ERISA. No federal claims are asserted in the present lawsuit.

Sullivan asserts that Raytheon has discriminated against and retaliated against Sullivan in violation of G.L. c. 151B, and as a result Sullivan sustained injuries and damages (Comp. ¶¶32-33).

General Laws c. 152, §75A provides in part that "Any person who has lost a job as a result of an injury compensable under this chapter shall be given preference in hiring by the employer for whom he worked at the time of compensable injury over any persons not at the time of application for re-employment employed by such employer provided ... that a suitable job is available." (Comp. ¶40).

General Laws c. 152, §75B provides in part that "Any employee who has sustained a work-related injury and is capable of performing the essential functions of a particular job, or who would be capable of performing the essential functions of such job with reasonable accommodations, shall be deemed to be a qualified handicapped person under the provisions of Chapter 151B." (Comp. ¶41).

General Laws c. 152, §75B(2) also provides in part that, "No employer or duly authorized agent of an employer shall discharge, refuse to hire or in any other manner discriminate against an employee because the employee has

exercised the right afforded by this Chapter ..." (Comp. ¶42).

Sullivan asserts that there were jobs available that he could have performed, that instead of providing one of those jobs to him, preference was given to other persons. Sullivan sustained work-related injuries and was capable of performing the essential functions of his job, or would have been capable of performing the essential functions of available jobs with a reasonable accommodation (Comp. ¶¶43-44).

Sullivan asserts that the defendant Raytheon discriminated against Sullivan because Sullivan exercised his rights to receive workers' compensation under General Laws c. 152, and that as a result of the unlawful and discriminatory acts, Sullivan sustained damages and injuries (Comp. ¶¶45-46).

## Reasons For Remanding The Case To The State Court

### I. 28 U.S.C., §1445(c) Provides That: "A Civil Action In Any State Court Arising Under The Workmen's Compensation Laws Of Such State May Not Be Removed To Any District Court Of The United States."

The purpose of 28 U.S.C., §1445(c) was to restrict federal diversity jurisdiction in cases where persons were claiming benefits under workers' compensation statutes. The statute was passed in 1958 pursuant to a trend to

restrict diversity jurisdiction, minimize the caseload of the federal courts and encourage the litigation of workers' compensation cases in state courts where persons claiming benefits under worker compensation laws were granted an adequate and complete remedy.[4] Since such cases arise and exist only by virtue of state law and no federal question or law of the United States is involved, the state court is the proper forum for adjudication.[5]

In the case at bar, Sullivan's complaint alleges an action arising solely under state law: Violation of Mass. Gen. L. c. 151B - handicap discrimination; violation of Mass. Gen. L. c. 93, §103, and violation of Mass. Gen. L. c. 152, §75A and 75B, Workers' Compensation Act. The action arises under and seeks remedy pursuant to the workers' compensation law and state anti-discrimination law.

One of Sullivan's claim "arises under" Mass. Gen. L. c. 152 since the merit of his claim rises or falls upon its direct applicability to a proposition of state law and the relief that is sought is specifically provided by application of that state law. Only where a plaintiff's suit was found to be an independent, judicially created

---

[4] See *Guthrie v. Dow Chemical Co.*, 445 F. Supp. 311 (S.D. Tex. 1978), *Armistead v. C & M Transport, Inc.*, 49 F.3d 43 (1st Cir. 1995).
[5] See *Hernandez v. Travelers Ins. Co.*, 489 F.2d 721 (5th Cir. 1974), *cert. den.*, 419 U.S. 844.

tort action and, therefore, not arising under the state's workers' compensation law, did §1445(c) not bar removal of an action brought under a state's workers' compensation law.[6]

Some courts have applied a more pragmatic approach to the "arising under" language of 28 U.S.C. §1445(c): Where the cause of action was specifically enumerated in a state's workers' compensation statute, it "arises under" that state's workers' compensation laws for purposes of the statute providing that a civil action in any state court which "arises under" workers' compensation laws of such state may not be removed to federal court.[7]

In *Thompson v. Cort Furniture Rental Corp.*, the court found that an employee's claims that he was discharged in retaliation for filing a workers' compensation claim arose under the workers' compensation law and, thus, removal was prohibited by statute. The court found that the retaliatory discharge action, similar to the instant case, was created by and dependent upon the state's workers' compensation act.[8] Similarly, Sullivan's claims that he is

---

[6] See *Smith v. Union Carbide Corp.*, 664 F. Supp. 290, 292 (E.D. Tenn. 1987).

[7] See *Bearden v. PNS Stores, Inc.*, 894 F. Supp. 1418 (D. Nev. 1995), *accord*, *Soto v. Tonka Corp.*, 716 F. Supp. 977 (W.D. Tex. 1989); *Kemp v. Dayton Tire & Rubber Co.*, 435 F. Supp. 1062 (W.D. Okla. 1977).

[8] Thompson v. Cort Furniture Rental Corp., 797 F. Supp. 618 (W.D. Tenn. 1992), accord, Rodkey v. W.R. Grace & Co., 764 F. Supp. 1313 (N.D. Ill. 1991).

not being allowed to return to work in violation of Mass. Gen. L. c. 151B, *inter alia*, form an essential element of his claim. Further, the success of his claim is dependent upon how such statutory provisions prohibiting retaliatory discharge are construed. Therefore, his claims "arise under" the Commonwealth's workers' compensation law and may not be removed pursuant to §1445(c).

**II. Where No Federal Question Appears On The Face Of The Plaintiff's Well-Pleaded Complaint, The Complaint Must Be Remanded To The State Court**

Under the well-pleaded complaint doctrine, a federal question must appear on the face of the plaintiff's properly pleaded complaint to establish federal jurisdiction.

> Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant. Absent diversity of citizenship, federal-question jurisdiction is required. The presence or absence of federal-question jurisdiction is governed by the "well-pleaded complaint rule," which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. See Gully v. First National Bank, 299 U.S. 109, 112-113, 57 S.Ct. 96, 97-98, 81 L.Ed. 70 (1936). The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law.[9]
>
> Ordinarily federal pre-emption is raised as a defense to the allegations in a plaintiff's

[9] *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).

> complaint. Before 1887, a federal defense such as pre-emption could provide a basis for removal, but, in that year, Congress amended the removal statute. We interpret that amendment to authorize removal only where original federal jurisdiction exists. See Act of Mar. 3, 1887, ch. 373, 24 Stat. 552, as amended by Act of Aug. 13, 1888, ch. 866, 25 Stat. 433. Thus, it is now settled law that a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue.[10]

There is no federal claim raised in the Complaint. This case is distinguishable from *Magerer v. John Sexton & Co.*, 912 F.2d 525 (1990), in that no claim is brought for breach of contract or interference with contract.

> There does exist, however, an "independent corollary" to the well-pleaded complaint rule, *id.*, at 22, 103 S.Ct., at 2853, known as the "complete pre-emption" doctrine. On occasion, the Court has concluded that the pre-emptive force of a statute is so "extraordinary" that it "converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." ... Once an area of state law has been completely pre- empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law. See *Franchise Tax Board, supra*, 463 U.S., at 24, 103 S.Ct., at 2854 ("[I]f a federal cause of action completely pre-empts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law").[11]

---

[10] *Caterpillar Inc. v. Williams*, 482 U.S. at 392-393.
[11] *Caterpillar Inc. v. Williams*, 482 U.S. at 393.

While the complete pre-emption corollary is often used in suits under 29 U.S.C. §185, Section 301 of the LMRA, it is not available when the well-pleaded Complaint is not a claim for breach of contract or for interference with contract as was the case in *Magerer v. John Sexton & Co.*, 912 F.2d 525 (1990).

Sullivan's state law claims are not dependent on an indentation of the collective bargaining agreement. Sullivan's claims arise from important and significant state remedial law designed to proscribe employment discrimination on the basis of handicap.[12]

The issues to be decided in the case at bar are whether Sullivan is protected under state law not to be discriminated because of his handicap, for the failure of Raytheon to provide a reasonable accommodation, for the failure of Raytheon to engage in an interactive process, and for retaliation.

Sullivan does not have to utilize the collective bargaining agreement to vindicate his rights under handicap discrimination law, but may file an independent lawsuit.[13]

As was so eloquently stated in *Dahill v. Police Department of Boston*, 434 Mass. 233 (2001):

---

[12] See *Caterpillar Inc. v. Williams*, 482 U.S. at 395.
[13] See *Wright v. Universal Maritime Service Corp.*, 525 U.S. 70, 78-79 (1998); and *Blanchette v. School Committee of Westwood*, 427 Mass. 176, 182 (1998).

> The Legislature has directed that the provisions of G.L. c. 151B 'shall be construed liberally' for the accomplishment of the remedial purposes of the statute. Surely one aspect of that remedial purpose is to encourage impaired persons to overcome or mitigate their disabilities ... The broad prohibition against the discrimination of qualified handicapped individuals contained in the 1980 amendment to the Massachusetts Constitution and the enactment three years later of legislation extending protection in employment to handicapped persons are recognition that persons who are physically or mentally impaired are nevertheless capable of becoming productive and successful members of the workforce. We construe G.L. c. 151B, §4, to give the fullest effect to that recognition.[14]

Once an employer is made aware of the fact that an employee may need a reasonable accommodation, the employer has the burden of finding a reasonable accommodation for the employee.

An employer is required to make reasonable accommodations to the individual's handicap unless the employer can demonstrate that the accommodation will impose an undue hardship on the operation of its business. M.G.L. c. 151B, §4(16) (Supp. 1988). Accordingly, an employer may not claim an individual with a handicap is unqualified without first considering how to accommodate the individual so that she will be able to perform the essential functions of the job. The failure to provide Sullivan a reasonable

---

[14] *Dahill v. Police Department of Boston*, 434 Mass. 233, 240-241 (2001).

accommodation for his handicaps is a distinct claim under G.L. c. 151B.[15]

An employer has a continuing obligation to make reasonable accommodations for its employees, and whenever an employee presents himself ready to return to work, the employer must take a new and independent look, despite the past, to determine whether at the time the employee presents himself ready to return, that he is capable of performing the essential functions of his job with or without a reasonable accommodation.[16]

The MCAD Guidelines in connection with handicap discrimination defines a reasonable accommodation as "Any adjustment or modification to a job (or the way a job is done), employment practice, or work environment that makes it possible for a handicapped individual to perform the essential functions of a particular job, and to enjoy equal terms, conditions and benefits of employment."

> In determining the type of reasonable accommodation required for an applicant or employee, the employer need not provide the best accommodation available or the accommodations specifically requested by the individual with the handicap. Rather, the employer must provide an accommodation (at its own expense), that is effective for its purpose. Types of accommodation that may, depending upon the circumstances, be considered

---

[15] *Dartt v. Browning-Ferris Industries, Inc.*, 427 Mass. 1, 10 (1998).
[16] See §4:63, Golder, *Labor and Employment Law: Compliance and Litigation, 2nd Ed.* (The West Group, 1999).

reasonable, include, but are not limited to, the following: (1) Making job facilities accessible to and equally usable by a handicapped person; (2) Modifying work schedules; (3) Modifying when and how an essential job function is performed . . . (5) Re-assigning non-essential job functions; . . . (9) Allowing time off for medical reasons.

An employer may not refuse to provide a qualified handicapped person with reasonable accommodation which would enable the person to perform the essential functions of the position, unless the employer can demonstrate that the accommodation required to be made would impose an undue hardship to the employer's business.[17]

The Commission encourages an open and on-going dialogue between employees and employers about the provision of reasonable accommodation. The goal is to accommodate the needs of qualified handicapped individuals, while satisfying the legitimate business interests of employers.

Once an employer is on notice that a qualified handicapped employee requires an accommodation to perform the essential functions of his/her job, the employer should initiate an informal interactive process with the qualified individual in need of accommodation. This process should identify the precise limitation resulting from the handicap and potential reasonable accommodation that could overcome those limitations.

If an employee alleges that the employer failed to reasonably accommodate the employee's handicap, the following burdens apply. The complainant must prove that (1) S/he was a qualified handicapped individual; (2) S/he needed a reasonable accommodation due to his/her handicap to perform his/her job; (3) The employer was aware of the handicap, and was

---

[17] MCAD Guidelines: Employment Discrimination on the Basis of Handicap, VII. The applicable Guidelines are attached to this Opposition as Exhibit "D."

> aware that the employee needed reasonable accommodation to perform his/her job; (4) The employer was aware of a need to reasonably accommodate the handicap, or the employer breached a duty, if any, to undertake reasonable investigation of a means to reasonably accommodate the handicap; (5) The employer failed to provide the employee the reasonable accommodation.[18]

General Laws chapter 151B §9 provides in part that:

> The provisions of this chapter shall be construed liberally for the accomplishment of the purposes thereof, and any law inconsistent with any provisions hereof shall not apply, but nothing contained in this chapter shall be deemed to repeal . . . any other law of this Commonwealth relating to discrimination because of race, color, religious creed, national origin, or ancestry . . .

It is important to keep in mind the purpose of the law "of eliminating and preventing discrimination." 804 CMR 1.10.

## CONCLUSION

For all of the foregoing reasons, Sullivan respectfully moves that this case be remanded to the State Superior Court.

[18] IX MCAD: Guidelines Employment Discrimination on the Basis of Handicap.

**CERTIFICATION PURSUANT TO LOCAL RULE 7.1(A)(2)**

I, Frederick T. Golder certify that I conferred with James F. Kavanaugh, Jr., Esquire, counsel for Raytheon, in good faith to resolve or narrow the issues with respect to this motion.

Respectfully Submitted
By his attorney,

Attorney for Plaintiff
Frederick T. Golder
BBO #198580
GOLDER & GOLDER
P.O. Box 232
Lynnfield, MA 01940
(781) 334-4284

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by ~~mail (by hand)~~ on 2/18/2004

**GOLDER & GOLDER**
ATTORNEYS AND COUNSELLORS AT LAW
P.O. Box 232
LYNNFIELD, MASSACHUSETTS 01940
Telephone (781) 334-4284
Facsimile (781) 334-5310
Email: ftgolder@verizon.net

FILED CLERKS OFFICE P 12: 10 DISTRICT OF MASS.

February 18, 2004\

Kathleen Boyce, Docket Clerk
John Joseph Moakley
U.S. Courthouse
One Courthouse Way
Room 5110
Boston, MA 02210

RE: Sullivan v. Raytheon Company
C.A. NO. 04-10045-MLW

Dear Ms. Boyce:

Enclosed please find Sullivan's Motion to Remand for filing. If the Court deems it necessary to conduct a hearing on this matter, I would appreciate a hearing at the very earliest convenience of the Court and before the Court considers Defendant's Motion to Dismiss and for Summary Judgment. I will not be available for hearing during the month of March, and have trials scheduled for April 5, 12, 15, and May 3.

I am also enclosing a Motion to Enlarge time to Respond to Defendant's Motion to Dismiss and for Summary Judgment.

If anything further is required, kindly advise.

Thank you for your courtesy in this matter.

Yours very truly,

Frederick T. Golder

FTG/rn
Enclosures

C: James F. Kavanaugh, Jr., Esquire
Mr. Donald E. Sullivan